UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIOLET P. BLANDINA, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MIDLAND FUNDING, LLC,<br>MIDLAND CREDIT MANAGEMENT, INC.<br><br>Defendants. | CLASS ACTION<br><br>C. A. No. 13-1179 |

## NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON LIABILITY AND IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff Violet P. Blandina, by counsel, submits this Notice of Supplemental Authority in support of her Motion for Partial Summary Judgment (Doc. 38) and in opposition to Defendants' Motion for Summary Judgment (Doc. 41).

Attached hereto is a copy of yesterday's precedential decision by the Court of Appeals for the Third Circuit in the case of *McLaughlin v. Phelan Hallinan & Schmeig, LLP.*, Case Nos. 13-2015, 13-3679, 13-3712 (3d Cir. June 26, 2014). In *McLaughlin*, the court reiterated this Circuit's jurisprudence under the Fair Debt Collection Practices Act that communications from debt collectors are analyzed "from the perspective of the least sophisticated debtor.... This low standard 'effectuate[s] the basic purpose of the FDCPA: to protect all consumers, the gullible as well as the shrewd.'" *Id.* at 8-9, citing cases.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Date: June 27, 2014 | *s/ David A. Searles* <br> FRANCIS & MAILMAN, P.C. <br> James A. Francis <br> David A. Searles <br> Land Title Building, 19th Floor <br> 100 South Broad Street <br> Philadelphia, PA 19110 <br> (215) 735-8600 <br>  <br> SABATINI LAW FIRM, LLC <br> Carlo Sabatini <br> 216 N. Blakely St. <br> Dunmore, PA 18512 <br> (570) 341-9000 <br> Land Title Building, 19th Floor <br> 100 South Broad Street <br> Philadelphia, PA 19110 <br> (215) 735-8600 |

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 13-2015, 13-3679, & 13-3712

TIMOTHY MCLAUGHLIN,
on behalf of himself and all others similarly situated,

v.

PHELAN HALLINAN & SCHMIEG, LLP;
LAWRENCE T. PHELAN; FRANCIS S. HALLINAN;
DANIEL G. SCHMIEG; ROSEMARIE DIAMOND

Timothy McLaughlin,
Appellant in 13-2015 & 13-3712

Phelan Hallinan & Schmieg, LLP; Lawrence T. Phelan;
Francis S. Hallinan; Daniel G. Shmieg; Rosemarie Diamond,
Appellants in 13-3679

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
PENNSYLVANIA
(D.C. No. 2-10-cv-01406)
District Judge: Hon. Cathy Bissoon

Argued May 14, 2014

Before: SMITH, VANASKIE, and SHWARTZ, Circuit Judges.

(Filed: June 26, 2014)

Trent A. Echard, Esq. [ARGUED]
Harry F. Kunselman, Esq.
Strassburger, McKenna, Gutnick & Gefsky
444 Liberty Avenue
Suite 2200, Four Gateway Center
Pittsburgh, PA 15222

      Counsel for Appellant/Cross-Appellee

Jonathan J. Bart, Esq. [ARGUED]
Daniel S. Bernheim, III, Esq.
Wilentz, Goldman & Spitzer
Two Penn Center Plaza
Suite 910
Philadelphia, PA 19102

      Counsel for Appellees/Cross-Appellants

## OPINION OF THE COURT

SHWARTZ, <u>Circuit Judge</u>.

    Timothy McLaughlin had a mortgage. As a result of an error, the mortgage company believed that he was in default and referred the matter to the law firm Phelan Hallinan & Shmieg, LLP, whose lawyers include Lawrence T. Phelan, Francis S. Hallinan, Daniel G. Schmieg, and Rosemarie Diamond (collectively "PHS"). PHS sent McLaughlin a letter about the debt that he claims violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 <u>et seq.</u> The District Court dismissed certain claims because McLaughlin did not ask PHS to validate the debt before he filed suit. Because we conclude that he is not required to do so, we will reverse. We will, however, affirm the District Court's imposition of sanctions against PHS for its failure to produce certain documents during discovery.

## I. BACKGROUND

### A. McLaughlin's Appeal[1]

In October 2005, Timothy McLaughlin executed a $325,000 adjustable rate note in favor of CitiMortgage, secured by a mortgage on his home. McLaughlin fell behind on his mortgage payments due to an error on CitiMortgage's part. In 2010, CitiMortgage referred McLaughlin's account to PHS. PHS sent him a letter (the "Letter") dated June 7, 2010, that stated that "[t]he amount of the debt as of 05/18/2010" was $365,488.40. App. 73. This included two line items relevant here: $650 in "Attorney's Fees" and $550 for "Costs of Suit and Title Search." App. 54-55, 73-74. McLaughlin asserts, among other things, that these fees and costs had not actually been incurred as of the date stated in the Letter.

Rather than seek verification of the debt from PHS, McLaughlin filed a putative class action complaint alleging that PHS violated several sections of the FDCPA by, among other things,[2] falsely representing that PHS had performed legal services on or before May 18, 2010. The District Court dismissed the complaint without prejudice, holding that McLaughlin could not bring suit challenging the information contained in the Letter without having first disputed the validity of the debt pursuant to the FDCPA's validation procedure.[3]

---

[1] Because McLaughlin only appeals the dismissal of his claims pursuant to Fed. R. Civ. P. 12(b)(6), the facts are drawn from McLaughlin's First Amended Complaint. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (stating we "accept all factual allegations as true" in reviewing the dismissal of a complaint) (internal quotation marks omitted).

[2] McLaughlin also alleged that the Letter gave the impression that attorneys had been involved in the debt collection activities. This claim was resolved in favor of PHS at summary judgment and McLaughlin does not appeal that ruling.

[3] Under the FDCPA, a debt collector who sends a notice concerning a debt must include "the amount of the debt" and "the name of the creditor to whom the debt is

3

After McLaughlin filed an amended complaint, the District Court issued another opinion, again stating that McLaughlin was required "to follow the debt validation procedure required by section 1692g" and that "the amended complaint fail[ed] to allege that" he had done so. App. 152-53. The District Court also found that the fees in the Letter were estimates and held that "estimating the amount of attorneys' fees in an itemized debt collection notice does not violate the FDCPA." App. 152-53. For these reasons, the District Court dismissed McLaughlin's claims under 15 U.S.C. § 1692e(2) and (10)[4,5] that alleged misrepresentations concerning the amount of the debt and the fees for services associated with its collection. McLaughlin appeals this ruling.

B. PHS's Cross-Appeal

---

owed" as well as inform the consumer that if he or she "notifies the debt collector in writing . . . that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt" and mail a copy to the consumer. 15 U.S.C. § 1692g(a). The Letter included this information. The statute further provides that if the consumer disputes the debt, then "the debt collector shall cease collection of the debt, or any disputed portion thereof," until the debt collector verifies the debt and mails the verification to the consumer. 15 U.S.C. § 1692g(b).

[4] Section 1692e(2) prohibits "[t]he false representation of" "the character, amount, or legal status of any debt" or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).

[5] The District Court also dismissed McLaughlin's claim under 15 U.S.C. § 1692f(1). Section 1692f(1) prohibits "[t]he collection of any amount . . . unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). McLaughlin does not challenge that ruling on appeal.

4

One claim survived dismissal, namely McLaughlin's claim that PHS violated the FDCPA by creating the false impression that attorneys were involved in the debt collection activity in violation of § 1692e(3).[6] Discovery proceeded on this claim. Before the motion had been decided, McLaughlin had served a document demand upon PHS seeking "'[a]ll invoices for professional services rendered by [PHS] in relation to the loan of Timothy McLaughlin.'" App. 186 (alterations in original). PHS objected, claiming that the information was not likely to lead to the discovery of admissible evidence. In response, McLaughlin filed a motion to strike this objection and a motion to compel, arguing that the invoices were "clearly relevant" to his claim "that Defendants sought attorney's fees and costs from him that had not been incurred and were not authorized by the underlying loan documents." Pl.'s Mot. to Strike Objections & Compel Disc. at 10, McLaughlin v. Phelan Hallinan & Schmieg, LLP, No. 10-1406 (W.D. Pa. Nov. 9, 2011), ECF. No. 66. The District Court orally granted McLaughlin's motion. Despite this order, PHS did not produce the invoices during discovery. Instead, they withheld them until they attached them to their summary judgment reply brief.

The District Court found that these invoices "contain[ed] . . . material facts" showing that PHS had in fact misstated the attorney's fees and costs of suit. App. 161. Specifically, the District Court noted that the invoices showed that PHS had incurred only $440 in total costs and $625 in fees, and not the $550 and $650, respectively, set forth in the Letter. As a result, the District Court invited McLaughlin to file a motion seeking relief from its orders dismissing his § 1692e(2) claim.

McLaughlin thereafter moved for reconsideration of the District Court's dismissal order, but the motion was denied. The District Court did not say that the Letter was accurate but rather held that it contained "reasonable estimates" of the itemized costs, and therefore did not violate the FDCPA. App. 182-84.

---

[6] Section 1692e(3) prohibits "[t]he false representation or implication that any individual is an attorney or that any communication is from an attorney." 15 U.S.C. § 1692e(3).

The District Court, however, did find that PHS's failure to produce the invoices during discovery was sanctionable under Fed. R. Civ. P. 37(b)(2)(A) and sua sponte ordered PHS to pay all expenses, including attorney's fees, that McLaughlin had incurred in connection with his motion for reconsideration, reasoning that PHS's action prevented full and timely investigation of the facts and led to additional briefing on the summary judgment motion.

The parties thereafter submitted briefs concerning the amount of the award. PHS argued that the District Court raised the issue of sanctions sua sponte, and hence did not provide PHS with notice that sanctions were being contemplated, and asked the District Court[7] to "reevaluat[e] . . . the imposition of sanctions" in light of its view that the invoices were irrelevant to the lack of attorney involvement claim under § 1692e(3), which was the only claim pending at the time discovery occurred, and to find that its noncompliance with the discovery order was therefore neither in bad faith nor willful. Mem. of Law in Opp'n to Pl.'s Appl. for Att'ys Fees & Expenses at 1-2, Apr. 8, 2013, ECF No. 111 ["ECF No. 111"]. The District Court considered this request, found that PHS had ample opportunity to address the sanctions issue, adopted the finding that the conduct was sanctionable, and ordered sanctions in the amount of $15,050.50. PHS appeals the sanctions order.

## II. DISCUSSION[8]

### A. FDCPA Claim

We will first address McLaughlin's appeal of the order dismissing his claims under § 1692e(2) and (10). We exercise plenary review of a district court's order granting a

---

[7] Because of Chief Judge Gary Lancaster's passing, the case was reassigned to Judge Cathy Bissoon, who considered and resolved the parties' arguments regarding the sanctions.

[8] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d). We have jurisdiction pursuant to 28 U.S.C. § 1291.

6

motion to dismiss. Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220 (3d Cir. 2011).[9]

### 1. Debt Collection Activity

McLaughlin contends that PHS's Letter "knowingly misrepresented that, as of May 18, 2010, $650 in attorney's fees and $550 in 'costs of suit and title search' were due and owing," and hence that the Letter violates the FDCPA. Appellant Br. 6. PHS contends that the Letter does not constitute "debt collection activity" subject to the FDCPA because it "made no demand for payment, contained no suggestion that [McLaughlin] settle the underlying debt, nor enter into a payment plan." Appellee Br. 31 (emphasis omitted).

The FDCPA "regulates 'debt collection'" but does not define the term. Simon v. FIA Card Servs., N.A., 732 F.3d 259, 265 (3d Cir. 2013). The statute's substantive provisions, however, make clear that it covers conduct "taken in connection with the collection of any debt." Id. (internal quotation marks and citations omitted). Put differently, activity undertaken for the general purpose of inducing payment constitutes debt collection activity. Id.; see also Gburek v. Litton Loan Servicing LP, 614 F.3d 380, 385 (7th Cir. 2010) (describing "the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt"). Thus, a communication need not contain an explicit demand for payment to constitute debt collection activity. Simon, 732 F.3d at 266. Indeed, communications that include discussions of the status of payment, offers of alternatives to default, and requests for financial information may be part of a dialogue to facilitate

---

[9] In his notices of appeal, McLaughlin identified both the District Court's order dismissing his claims under Rule 12(b)(6) and the order denying his motion for reconsideration, but this does not affect the standard of review. McAlister v. Sentry Ins. Co., 958 F.2d 550, 552-53 (3d Cir. 1992) ("Because an appeal from a denial of a Motion for Reconsideration brings up the underlying judgment for review, the standard of review varies with the nature of the underlying judgment.").

7

satisfaction of the debt and hence can constitute debt collection activity. Id.

PHS's Letter is plainly part of such a dialogue. The Letter states that PHS is a "debt collector attempting to collect a debt" and that information PHS obtains "may be used for that purpose," namely to collect a debt. App. 73. It then provides an invoice-like presentation of the amount due. The Letter also informs the recipient how to obtain "updated . . . payoff quotes," meaning how to obtain current information about the amount that would have to be paid to satisfy the debt. Id.

It is reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt. Thus, the Letter constitutes debt collection activity under the FDCPA and misrepresentations contained therein may provide a basis for relief.

### 2. Estimates

McLaughlin argues that the failure to accurately set forth the amount due as of May 18, 2010 constitutes a misrepresentation actionable under § 1692e(2) and (10) and the order dismissing these claims should be reversed. These subsections prohibit "[t]he false representation of" either "the character, amount, or legal status of any debt" or "any services rendered or compensation which may lawfully be received by any debt collector for the collection of a debt," 15 U.S.C. § 1692e(2), as well as "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," 15 U.S.C. § 1692e(10).

Each of these provisions deals with debt collectors' representations to debtors. We analyze such communications "from the perspective of the least sophisticated debtor." Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006). This low standard "effectuate[s] the basic purpose of the FDCPA: to protect all consumers, the gullible as well as the

8

shrewd." Rosenau, 539 F.3d at 221 (internal quotation marks and alterations omitted).

PHS contends that the Letter did not violate the FDCPA because it contained estimates of the amount owed. This characterization is inconsistent with the unequivocal language of the Letter. The Letter says that it sets forth "[t]he amount of the debt as of 05/18/2010." App. 73. The only message this conveys to the reader is the amount owed on a specific date. Nothing says it is an estimate or in any way suggests that it was not a precise amount. As the drafter of the Letter, PHS is responsible for its content and for what the least sophisticated debtor would have understood from it. See Glover v. FDIC, 698 F.3d 139, 149 (3d Cir. 2012) ("The language of [§ 1692e(2)(A)] creates a straightforward, objective standard. Nothing suggests that an allowance is to be made for a defendant's lack of knowledge or intent."). If PHS wanted to convey that the amounts in the Letter were estimates, then it could have said so. It did not. Instead, its language informs the reader of the specific amounts due for specific items as of a particular date. If the amount actually owed as of that date was less than the amount listed, then, construing the facts in the light most favorable to McLaughlin as we must when reviewing the dismissal under Rule 12(b)(6), Phillips, 515 F.3d at 233, McLaughlin has stated a claim that the Letter misrepresents the amount of the debt in violation of § 1692e(2) and (10).

### 3. Prerequisite to Filing Suit

PHS argues that it nonetheless cannot incur "liability as a matter of law where it has complied with the debt validation procedure set forth in the FDCPA,"[10] Appellee Br.

---

[10] Contrary to PHS's argument, McLaughlin's assertion is not a new theory as his pleadings show he alleged that the amount of the debt listed in the Letter was inaccurate. See App. 63 (First Amended Complaint alleging the Letter "misstated the amount of the debt" and gave "a false impression of the amount of the alleged debt"), 182 (District Court stating "McLaughlin argues that PHS violated section 1692e(2) of the FDCPA because the attorneys' fees and costs

9

26-27 (emphasis omitted), and McLaughlin did not seek to validate the debt described in the Letter.[11] This argument lacks any statutory support.

The statute's text provides no indication that Congress intended to require debtors to dispute their debts under § 1692g before filing suit under § 1692e, and in fact, the statutory language suggests the opposite. The language of § 1692g indicates that disputing a debt is optional. The statute lists consequences "[i]f the consumer" disputes a debt, 15 U.S.C. § 1692g(b)[12] (emphasis added), and it makes clear that

---

stated in the Letter do not match the attorneys' fees and costs stated in contemporaneous invoices").

[11] Several district courts share this view. See, e.g., Bleich v. Revenue Maximization Grp., Inc., 233 F. Supp. 2d 496, 500 (E.D.N.Y. 2002) (holding that a plaintiff could not sue in response to a misstated debt in a letter conforming to the FDCPA's validation requirements and reasoning "[h]ad Plaintiff exercised her rights under the FDCPA to obtain debt verification, it is entirely likely that litigation would have been avoided"); Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 179 (D. Conn. 1994) ("[T]he court can only wonder why the plaintiff has chosen to impose the significant burden of litigation on both the defendant and this court, instead of simply following the cost-effective procedures provided by the FDCPA specifically designed to facilitate the exchange of information between debt collectors and debtors."); see also Lorandeau v. Capital Collection Serv., No. 10-3807, 2011 WL 4018248, at *11-12 (E.D. Pa. Sept. 8, 2011) (holding that a plaintiff cannot bring a claim based upon a defendant's attempt to collect an invalid debt unless the plaintiff disputed the debt); Palmer v. I.C. Sys., Inc., No. 04-3237, 2005 WL 3001877, at *5 (N.D. Cal. Nov. 8, 2005) (recognizing that although the FDCPA does not require a consumer to dispute a debt, a consumer who fails to do so cannot assert a claim based upon the debt collector's attempt to collect an invalid debt). As explained in the text, there is no statutory support for this view.

[12] Specifically, the debt collector must

> cease collection of the debt, or any disputed portion thereof, until the debt collector obtains

10

failure to dispute a debt cannot be construed as an admission of liability. 15 U.S.C. § 1692g(c). Thus, the statute protects a prospective litigant from being penalized in a lawsuit if he or she chooses not to seek validation. The absence of a pre-suit validation request requirement does not appear accidental given the protection Congress bestowed on those who opt not to seek validation of the debt.

Moreover, permitting debtors to proceed under § 1692e without first disputing their debts under § 1692g is consistent with this Court's FDCPA jurisprudence, which has never imposed a § 1692g prerequisite and which has consistently emphasized the purpose of the FDCPA as a remedial statute, applying a "least sophisticated debtor" standard to "lender-debtor communications." Brown, 464 F.3d at 453-54; see also Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) ("[T]he debt validation provisions of section 1692g were included . . . to guarantee that consumers . . . receive[d] adequate notice of their rights under the law."). Imposing a § 1692g dispute prerequisite in the absence of any statutory language requiring it would undermine the FDCPA's protection of unsophisticated debtors, who would have no reason to suspect that they would be prevented from filing suit concerning deceptive communications as a consequence of failing to invoke the optional statutory validation procedure.

Furthermore, imposing a requirement that the debtor challenge the validity of the debt described in a communication before filing suit would have the effect of

---

> verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. . . . Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt . . . .

15 U.S.C. § 1692g(b).

11

immunizing false statements that a consumer failed to promptly dispute.[13] Put differently, if a debt collector's communication was false, the debt collector would avoid liability for the false communication simply because a request to validate its contents was not made. This would be inconsistent with the FDCPA's goal of ensuring debt collectors act responsibly.

Finally, declining to require debtors to lodge disputes under § 1692g before filing suit would not frustrate the FDCPA's validation procedure. See Lindbergh v. Transworld Sys., Inc., 846 F. Supp. 175, 179 (D. Conn. 1994) (contrasting "the significant burden of litigation" with "the cost-effective [validation] procedures provided by the FDCPA"). Debtors will still have an incentive to follow the validation procedure even if pursuit of the validation process is not required to preserve the ability to file suit as it can enable debtors to cheaply and quickly resolve disputes with debt collectors. Moreover, because the validation process facilitates the exchange of information, it may ultimately help debtors bolster their FDCPA claims. See Hubbard v. Nat'l Bond & Collection Assocs., Inc., 126 B.R. 422, 428 (D. Del.), aff'd, 947 F.2d 935 (3d Cir. 1991) (table) ("[T]his exchange of information [under § 1692g's validation procedure] provides debt collectors with 'actual knowledge' of the facts relevant to their collection efforts. This is significant because only a knowing violation of § 1692e is actionable.").

For these reasons, a consumer is not required to seek validation of a debt he or she believes is inaccurately described in a debt communication as a prerequisite to filing

---

[13] Gigli v. Palisades Collection, L.L.C., No. 06-1428, 2008 WL 3853295, at *6-7 (M.D. Pa. Aug. 14, 2008) ("If the debt collector employs false, deceptive, or misleading representations or unfair or unconscionable means in the course of collecting or attempting to collect a debt, the fact that the debt collector provided the consumer written notice complying with § 1692g(a) and/or the consumer never disputed the debt has no bearing on the debt collector's liability under the FDCPA. . . . Immunizing unscrupulous debt collectors, while depriving consumers of a remedy, would frustrate the FDCPA.").

12

suit under § 1692e. Thus, the District Court's imposition of such a requirement was incorrect and its dismissal of McLaughlin's § 1692e(2) and (10) claims on this basis was improper.

B. Sanctions

We next address the order imposing sanctions against PHS. We review the District Court's imposition of sanctions under Rule 37 for abuse of discretion. Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009). A district court abuses its discretion if it "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id. (internal quotation marks and alterations omitted).[14] We exercise plenary review of PHS's assertion that it was not provided due process before the District Court imposed sanctions. Martin v. Brown, 63 F.3d 1252, 1262 (3d Cir. 1995).

PHS asserts that the sanction order should be reversed because it did not engage in sanctionable conduct and it did not receive notice that sanctions were being contemplated before they were imposed. We will address each contention in turn.

Rule 37 provides, in relevant part, that a party's failure "to obey an order to provide or permit discovery" allows "the court . . . [to] issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Rule 37 requires "the court [to] order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

---

[14] PHS argues that the factors listed in Poulis v. State Farm Fire and Casualty Co., 747 F.2d 863, 868-70 (3d Cir. 1984), should be considered when reviewing a trial court's imposition of sanctions. Poulis, however, addressed "the extreme sanction of dismissal." Poulis, 747 F.2d at 868 (internal quotation marks omitted). Because a monetary sanction was imposed here, Poulis is inapposite.

13

Here, there was a clear violation of the District Court's discovery order. The District Court ordered PHS to produce documents responsive to McLaughlin's demand for invoices for any services provided relating to the debt. PHS did not do so. The District Court explained that McLaughlin's document request plainly encompassed the invoices PHS withheld and it rejected PHS's argument that the invoices it withheld were not requested. The District Court further explained that PHS's noncompliance impacted the parties' investigation of the facts and caused additional briefing. As a result, it properly found PHS violated the discovery order.

PHS argues that it should not have been sanctioned for this noncompliance because the invoices McLaughlin requested were irrelevant in light of the District Court's December 20, 2011 order stating that McLaughlin's only remaining claim at that time was his § 1692e(3) claim concerning PHS's alleged misrepresentations regarding the involvement of attorneys. Appellee Br. 41. This does not excuse PHS's failure to comply with a discovery order that had been issued the previous day and remained extant. Moreover, contrary to PHS's argument, the invoices relating to PHS's work on McLaughlin's debt were relevant under Fed. R. Civ. P. 26(b)(1) to McLaughlin's then-pending § 1692e(3) claim that no attorney worked on or reviewed the Letter. PHS in fact acknowledged the relevancy of these documents by using them to support its motion for summary judgment. Thus, the District Court's conclusion that PHS's noncompliance with its discovery order was sanctionable was correct.

PHS argues that it was entitled to notice and an opportunity to respond before the District Court imposed sanctions. Due process requires that the party against whom sanctions might be imposed receive notice that sanctions are being considered. See, e.g., In re Tutu Wells Contamination Litig., 120 F.3d 368, 379 (3d Cir. 1997) ("The party against whom sanctions are being considered is entitled to notice of the legal rule on which the sanctions would be based, the reasons for the sanctions, and the form of the potential sanctions."); Martin, 63 F.3d at 1262-63 ("With regard to sanctions, particularized notice of the grounds for the sanction under consideration is generally required."). The "mere

14

existence" of a rule or statute concerning sanctions is insufficient to put a party on notice that sanctions are being contemplated. Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1357 (3d Cir. 1990).

It is true that PHS did not receive notice that sanctions were being considered before the District Court initially imposed them and hence did not immediately have an opportunity to argue that its failure was substantially justified. PHS, however, eventually provided arguments why it believed its conduct was not sanctionable. More specifically, in connection with the briefing on the magnitude of sanctions, PHS explicitly laid out its arguments why its conduct was substantially justified and neither in bad faith nor willful and asked the newly assigned District Court Judge to "reevaluat[e] . . . the imposition of sanctions." ECF No. 111. The District Court considered these arguments, reaffirmed the relevance of the discovery sought and the impact of the tardy production, and, for those reasons "and for all of the reasons previously stated in" her predecessor's decision, ordered sanctions in the form of attorney's fees. Thus, PHS had notice of the conduct that the District Court found to be sanctionable, had an opportunity to be heard, and received review and a ruling from a different judge concerning their conduct. Accordingly, we conclude PHS received due process and we will affirm the sanctions order.

### III. CONCLUSION

For these reasons, we will reverse the District Court's order dismissing McLaughlin's FDCPA claims under § 1692e(2) and (10) and affirm its order imposing sanctions against PHS.

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served by electronic mail through the Court's ECF notification system upon the following on the date below:

>Ronald M. Metcho, II
>Andrew Schwartz
>MARSHALL DENNEHEY WARNER
>COLEMAN & GOGGIN, P.C.
>2000 Market Street, 24th Floor
>Philadelphia, PA 19103

Date: June 27, 2014

>*David A. Searles*
>David A. Searles