# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VIOLET P. BLANDINA, on behalf of herself and all others similarly situated<br>*Plaintiff* | : | CIVIL ACTION |
| | : | |
| | : | NO. 13-1179 |
| | : | |
| v. | : | |
| | : | |
| MIDLAND FUNDING, LLC, *et al.*<br>*Defendants* | : | |
| | : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                      December 23, 2014

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion for class certification* filed pursuant to Federal Rule of Civil Procedure (Rule) 23 by Violet P. Blandina ("Plaintiff"), [ECF 36], the opposition filed by Defendants Midland Funding, LLC ("MF") and Midland Credit Management, Inc. ("MCM") (collectively "Defendants"), [ECF 39], and Plaintiff's reply. [ECF 46]. The motion has been fully briefed and for the reasons stated herein, the motion for class certification is granted.

### BACKGROUND

The largely undisputed relevant facts of Plaintiff's claims are summarized as follows:

> Plaintiff, a resident of Pennsylvania, obtained an account with Verizon Pennsylvania, Inc., which she used for personal, family, or household purposes. At some point in time, Plaintiff defaulted on her payments. Subsequently, Defendant MF, a purchaser of defaulted consumer debt, acquired the defaulted Verizon account. By letters dated March 9, 2011, July 30, 2011, and September 10, 2011, Defendant MCM, a collector of consumer debt contracted by Defendant MF, attempted to collect Plaintiff's debt. In each of the three collection letters, Defendant MCM represented that Plaintiff owed $568.10.

> On March 8, 2012, Defendant MCM sent Plaintiff a fourth collection letter which again repeated that the amount owed on the

defaulted account was $568.10.   The letter also included the following language:

> Benefits of Paying!
> We will stop
> applying interest to
> your account!

Over the course of this litigation, Defendants have admitted that no interest had accrued and no interest would accrue on Plaintiff's account, or on any other similar account acquired by Defendant MF from Verizon.

In her complaint, [ECF 1], and amended complaint, [ECF 2], Plaintiff asserts claims on behalf of herself and a purported class of similarly-situated debtors, averring that Defendants violated various provisions of the Fair Debt Collection Practices Act ("FDCPA") when sending her and the purported class members the above-described collection letter which misrepresented that interest was accruing on the debt owed, when, in fact, interest was not.

In the instant motion, Plaintiff moves to certify a class of similarly-situated debtors based on the allegations in her amended complaint.[1]   [ECF 36].   Specifically, Plaintiff defines the proposed class members as:

> All consumers in the Commonwealth of Pennsylvania to whom, from March 5, 2012, and continuing through the resolution of this action, Defendants sent a letter substantially in the form attached to the Amended Complaint as Exhibit A, in an attempt to collect a consumer debt allegedly owed to Verizon Pennsylvania, Inc.

**LEGAL STANDARD**

Rule 23 governs the certification of class actions in federal court.   A plaintiff seeking class certification must satisfy all requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).   *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, ___ U.S. ___, 133 S.Ct. 1184,

---

[1] In her original motion for class certification, Plaintiff sought certification of a second, more broadly defined class of plaintiffs. [ECF 13].   As is apparent from Plaintiff's current motion for class certification, however, Plaintiff has dropped the second proposed class. Accordingly, this Court does not address that second class or Defendants' arguments in opposition to it.

1194 (2013); *see also Marcus v. BMW of North America*, 687 F.3d 583, 590 (3d Cir. 2012). "Rule 23 does not set forth a mere pleading standard. A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes,* __ U.S. __, 131 S.Ct. 2541, 2551 (2011). A district court's analysis of a motion for class certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc.,* 133 S.Ct. at 1194 (quoting *Dukes,* 131 S.Ct. at 2551). However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether Rule 23 prerequisites for class certification are satisfied." *Id.* at 1194-95. "Factual determinations necessary to make Rule 23 findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.,* 552 F.3d 305, 320 (3d Cir. 2008).

To satisfy the Rule 23(a) requirements:

> (1) the class must be "so numerous that joinder of all members is impracticable" (numerosity); (2) there must be "questions of law or fact common to the class" (commonality); (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" (typicality); and (4) the named plaintiffs must "fairly and adequately protect the interests of the class" (adequacy of representation, or simply adequacy).

*Marcus,* 687 F.3d at 590-91 (citations omitted).

Here, Plaintiff seeks certification of the proposed class, as previously defined, pursuant to Rule 23(b)(3). This Rule permits certification when the court finds that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

**DISCUSSION**

In the class action complaint, Plaintiff avers that Defendants violated various provisions of the FDCPA when sending a collection letter (*see* Exhibit A, attached to the amended complaint) that was a false, deceptive, or misleading representation or means in connection with the collection of a debt, and/or was an unfair or unconscionable means to collect or attempt to collect a debt. Plaintiff's contentions are premised on the argument that the representation that appears in the letter implies that if the consumer/recipient agreed to pay a certain reduced amount of money to satisfy the debt owed, Defendants would stop applying interest to the debt when, in reality, Defendants admittedly were not applying interest to the debt despite the language or representation in the letter; *to wit*: *"Benefits of Paying!  We will stop applying interest to your account!"* (Emphasis added).

In the underlying motion, Plaintiff seeks class certification.  To determine whether class certification is appropriate, an analysis of each Rule 23 (a) factor is required.

### 1. Ascertainability

As a prerequisite to class certification, a plaintiff "must show by a preponderance of the evidence that there is a reliable and administratively feasible method for ascertaining the class." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 356 (3d Cir. 2013).  To ascertain the class, "the class must be defined with reference to objective criteria," and, "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Id.* at 355.

Defendants argue that Plaintiff's proposed class is not adequately identifiable because it includes all consumers domiciled in Pennsylvania who were sent collection letters "substantially in the form" of the letter sent to Plaintiff and, thus, requires a subjective analysis. Defendants' argument is disingenuous.  By their discovery responses, Defendants have demonstrated their

4

ability to identify the members of the proposed class, as defined by Plaintiff, by searching their records for the names of individuals with addresses in Pennsylvania who have defaulted on Verizon accounts and to whom a collection letter, containing the misrepresentation at issue – "Benefits of Paying! We will stop applying interest to your account" – was sent. (*See* April 7, 2014 E-mail, ECF 36-4 at p. 107). Furthermore, other courts have approved class certification in FDCPA cases where the class definition included the "substantially similar" language proposed by Plaintiff here. *See e.g., Butto v. Collecto Inc.*, 290 F.R.D. 372 (E.D. N.Y. March 29, 2013); *Garland v. Cohen & Krassner*, 2011 WL 6010211, at *2 (E.D. N.Y. Nov. 29, 2011).

In addition, Defendants argue that the proposed class definition is overly broad because it includes consumers who were "sent," but did not receive the letter at issue. This argument is misplaced. Under the applicable provisions of the FDCPA, a debt collector violates the FDCPA if, *inter alia*, it "attempt[s] to collect any debt" through the use of any false representation or deceptive means. *See* 15 U.S.C. §1692e(10). Thus, the focus of the statute is on the conduct of the debt collector. The statute does not require the receipt of the misleading letter for the conduct to be actionable. Rather, the mere fact that the misleading collection letter *was sent* in an attempt to collect a debt owed is sufficient to trigger liability. As set forth above, Defendants have demonstrated their ability to identify those consumers in Pennsylvania to whom the collection letter at issue was sent. Again, other courts have certified proposed classes in FDCPA cases where the definition included consumers to whom a collection letter was "sent," as opposed to mere recipients. *See, e.g., McCall v. Drive Financial Services, L.P.*, 236 F.R.D. 246 (E.D. Pa. June 19, 2006); *Garland v. Cohen Krassner*, 2011 WL 6010211, at *2 (E.D. N.Y. Nov. 29, 2011); *Hernandez v. Midland Credit Management*, 236 F.R.D. 406 (N.D. Ill. 2006).

This Court finds that the proposed class is sufficiently ascertainable. The class is limited to consumers in Pennsylvania to whom Defendants sent a letter similar to the one sent to Plaintiff and attached to the amended complaint, in an attempt to collect a defaulted consumer debt that MF had acquired from Verizon Pennsylvania, Inc. As evidenced by Defendants' responses to discovery to date, members of the proposed class can be identified through a review of Defendants' company records, which track Defendants' communications with the consumers attached to the defaulted Verizon accounts acquired by MF. As described below, Defendants have already identified more than 68,000 potential class members using Plaintiff's proposed class definition. Accordingly, Plaintiff has satisfied the preliminary Rule 23(a) considerations.

### 2. Numerosity

Under Rule 23(a)(1), the court must determine whether the potential class is "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Although "Rule 23(a)(1) does not require a plaintiff to offer direct evidence of the exact number and identities of the class members . . . in the absence of direct evidence, a plaintiff must show sufficient circumstantial evidence specific to the products, problems, parties, and geographic areas actually covered by the class definition to allow a district court to make a factual finding." *Hayes*, 725 F.3d at 357. "Only then may the court rely on 'common sense' to forgo precise calculations and exact numbers." *Id.*

Here, Plaintiff contends that the number of potential class members is in the thousands. As evidence, Plaintiff points to Defendants' search of their business records for the names of

individuals to whom were sent a substantially similar letter to the one sent to Plaintiff. After de-duping, Defendants' search resulted in the identification of 68,401 individuals. Defendants do not contest that Plaintiff has met the numerosity requirement, and this Court agrees.

### 3. Commonality and Typicality

Pursuant to Rule 23(a)(2), a court must determine whether "there are questions of law or fact common to the class," ordinarily known as "commonality." Fed.R.Civ.P. 23(a)(2). Under the Rule, commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart*, 131 S.Ct. at 2551. It "does not require identical claims or facts among class member[s]." *Marcus v. BMW of North America, LLC*, 687 F.3d 583, 597 (2012) (citations omitted). "For purposes of Rule 23(a)(2), even a single common question will do." *Id.* Claims common to the entire class "must depend on a common contention . . . [that is] of such a nature that it is capable of classwide resolution . . . [and] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 131 S.Ct. at 2551.

Under Rule 23(a)(3), a court must also determine whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). Typicality and commonality are closely related and often merge. *Marcus*, 687 F.3d at 597. Typicality, however, "derives its independent legal significance from its ability to 'screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present.'" *Id.* at 598. "If a plaintiff's claim arises from the same event, practice, or course of conduct that gives rise[] to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Id.*

7

Typicality ensures that the putative class members' and representative's interests "are aligned 'so that the latter will work to benefit the entire class through the pursuit of [their] own goals.'" *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001) (citations omitted). Typicality is met "when the named plaintiffs and the proposed class members 'challenge [] the same unlawful conduct." *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 394 (E.D. Pa. 2001) (quoting *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994)). Complete "factual similarity is not required; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009).

Here, in opposing class certification, Defendant argues that Plaintiff lacks commonality and typicality with the proposed class because liability as to each class member will turn on individualized inquiries regarding the type of account (consumer or commercial) and the terms of the account (interest rate charged and/or the existence of arbitration agreements or class action waivers). Defendants' argument is misguided for several reasons.

As to the type of account, the class as proposed by Plaintiff is limited to "consumers." Therefore, no individualized factual inquiry will be necessary to determine the type of account. In addition, the discovery provided to date clearly establishes that the defaulted Verizon accounts acquired by Defendant MF were consumer accounts and can be readily identified as such. Further, similar arguments have been rejected by several other courts. *See, e.g., Butto v. Collecto Inc.*, 290 F.R.D. 372, 382-83 (E.D.N.Y. 2013) (collecting cases in which courts have rejected a defendant's argument regarding consumer versus commercial debts for class certification purposes). This Court agrees with the reasoning of the cases cited therein. Indeed, as recognized

8

in *Wilkerson v. Bowman*, 200 F.R.D. 605, 609 (N.D. Ill. 2001), "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA." As to the other terms of the proposed plaintiffs' agreements with Verizon, Defendants have already conceded that no interest was being charged to any of the defaulted Verizon accounts and have represented that the agreements at issue did not contain either arbitration clauses or class action waivers. (*See* Letter from Counsel, ECF 36-5 at pp. 2-3).

Although dissimilarities between the class members are possible, there are several common questions of fact and law. As noted, the proposed class consists of "consumers" within Pennsylvania to whom Defendants sent a collection letter similar to the one sent to Plaintiff, seeking collection on those consumers' defaulted Verizon accounts. As such, the factual basis of the claim is common to all potential class plaintiffs. In addition, each proposed plaintiff's claim is dependent on the resolution of the same common legal issue: whether Defendants violated the FDCPA by sending the proposed class plaintiffs a letter substantially in the form as that sent to Plaintiff which contained a false, deceptive and/or misleading representation of an accrual or addition of interest to the defaulted amount owed. As noted, this Court finds that these issues are common to all class members as each class member's claim will turn on whether Defendants sent each individual plaintiff a collection letter containing the same misrepresentation pertaining to the accrual of interest on the defaulted Verizon account. As such, Plaintiff has met the commonality requirement.

In addition, the facts and legal underpinnings of Plaintiff's case are typical of those of the proposed class. While there may be some factual disparities, these disparities should not pose a conflict between the named Plaintiff and the class she seeks to represent. Each class member's

claim arises from the same or similar collection letter sent to each member containing the same purported misrepresentation regarding the accrual of interest on their defaulted Verizon account. Plaintiff's legal theory and the burden of proof are the same as they would be for each member of the putative class. Therefore, this Court finds that the typicality requirement is also satisfied.

### 4. Adequacy

Under Rule 23(a)(4), a court must also determine whether the proposed class representative "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To meet the adequacy requirement, a finding must be made that (1) Plaintiff's interests do not "conflict with those of the class" and (2) the proposed class counsel are "capable of representing the class." *Newton*, 259 F.3d at 185. The Third Circuit has "recognized that the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class," *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 183 (3d Cir. 2012), and "not proof of vigorous pursuit of the claim." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 307 (3d Cir. 2005). This requirement serves "to ensure that the putative named plaintiff has the incentive to represent the claims of the class vigorously." *Dewey*, 681 F.3d at 184.

Here, Defendant challenges Plaintiff's adequacy to represent the class members because of various deposition testimony wherein she appears to lack precise knowledge of the legal premise of her claims. "A class representative need only possess 'a minimal degree of knowledge necessary to meet the adequacy standard.'" *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007). While Plaintiff's cited deposition testimony may suggest that she is not fluent with the legal theories of her case, it reveals a general basic

understanding of the factual underpinnings of the claim. This Court is satisfied that Plaintiff can fairly and adequately represent the interest of the proposed class.

While Defendants do not question the qualifications or competency of Plaintiff's counsel, Defendants challenge the necessity of two law firms to represent the proposed class. In their challenge, however, Defendants provide no guidance or case law to support their argument that the appointment of class counsel should be limited to one firm. Indeed, class action plaintiffs are often represented by more than one law firm. Further, by Order dated May 15, 2013, [ECF 19], the Honorable Legrome D. Davis granted Plaintiff's motion for the interim appointment of class counsel and appointed, as counsel, the proposed class counsel law firms. Since the appointment, both law firms have litigated this matter on behalf of Plaintiff and the proposed class. This Court finds that Defendants have presented no persuasive argument to stray from that order or vacate it.

### Rule 23(b)(3) Requirements

Having found that Plaintiff has satisfied each of the Rule 23(a) prerequisites, this Court must determine pursuant to Rule 23(b) whether "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3). These two requirements are generally referred to as the "predominance and superiority" factors.

### a. Predominance

The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Issues common to the class must "predominate" over individual issues. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 313-14 (3d Cir. 1998). "Because the 'nature of

the evidence that will suffice to resolve a question determines whether the question is common or individual,' 'a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *In re Hydrogen Peroxide*, 552 F.3d at 311 (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

In arguing that Plaintiff has not met the Rule 23(b) requirements, Defendants make the same arguments identified and considered above, *i.e.*, that fact issues as to the type of account (consumer or commercial) and terms of the account (interest and arbitration and waiver provisions) predominate over common issues of fact and law. For the same reasons discussed above, Defendants' contentions are misplaced. Thus, reiterating, the essence of Plaintiff's claim is that Defendants sent her and each class plaintiff a collection letter containing a false, deceptive and/or misleading representation as to the interest accrued or to accrue on their defaulted Verizon accounts. To succeed on the FDCPA claim, Plaintiff needs only to show that Defendants' debt collection practices were deceptive from the perspective of the least sophisticated consumer. *See Graziano v. Harrison*, 950 F.2d 107, 111 (3d Cir. 1991). This is the same showing that any member of the class would have to make in order to prevail on his/her FDCPA claim based on the same conduct and representations of Defendants. As other courts in this district have found, the factual and legal issues in an FDCPA class action based on the debt collector's alleged misrepresentations are generally identical for all class members. *See, e.g., Seawell v. Universal Fidelity Corp.*, 235 F.R.D. 64, 67 (E.D. Pa. 2006) (certifying class for FDCPA claims); *Oslan v. Collection Bureau of Hudson Valley*, 206 F.R.D. 109, 111-12 (E.D. Pa. 2002) (same); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997) ("[P]redominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). As such,

this Court finds that the questions of law or fact common to class members that involve liability predominate over questions involving only individual members.

### b. Superiority

Under the second criterion of Rule 23(b), this Court must find that a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b). The superiority element requires courts "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods of adjudication.'" *Community Bank of Northern Virginia*, 418 F.3d at 309 (citations omitted). A "nonexhaustive list of factors pertinent to a court's 'close look'" at the superiority requirement is found in the text itself. *Amchem*, 521 U.S. at 615-16. The list includes:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

Fed.R.Civ.P. 23(b)(3)(A)-(D). The Third Circuit has noted that the FDCPA specifically provides for class damages and recognized that a class action is a benefit to claimants who can share the cost of litigation when their individual recoveries are relatively small, as is the case here. *Weiss v. Regal Collections*, 385 F.3d 337, 344-45 (3d Cir. 2004) ("Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA."); *see also Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190 (9th Cir. 2001) ("Where damages suffered by each putative class member are not large, this factor weighs in favor of certifying a class action.").

Based upon this analysis, this Court finds that consideration of the Rule 23(b) factors weighs favorably for certification. Because of the number and nature of potential class plaintiffs

and the fact that each member's potential recovery is likely to be small compared to the cost of litigating an individual case, maintaining this matter as a class action is judicially advisable and superior to other available methods.

**CONCLUSION**

After carefully concluding the requisite "vigorous analysis" of the factors in Rules 23(a) and (b) and considering the case law cited, this Court finds that the requirements of Rule 23 have been met and that certification of Plaintiff's proposed class is proper. An order consistent with this memorandum opinion follows.

NITZA I. QUIÑONES ALEJANDRO, U.S.D.C. J.

14