**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VIOLET P. BLANDINA, on behalf of herself and all others similarly situated,** | **CLASS ACTION** |
| **Plaintiff,** | |
| **v.** | **C. A. No. 13-cv-1179** |
| **MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC.** | |
| **Defendants.** | |

**MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

For the reasons set forth in the accompanying Memorandum of Law, Plaintiff Violet P. Blandina hereby seeks final approval of the class action settlement preliminarily approved by this Court by Order dated September 23, 2015 (Doc. 80).

Respectfully submitted,

Date: March 3, 2016

*s/ David A. Searles*
FRANCIS & MAILMAN, P.C.
James A. Francis
David A. Searles
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

SABATINI LAW FIRM, LLC
Carlo Sabatini
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **VIOLET P. BLANDINA, on behalf of herself and all others similarly situated,** | ) | **CLASS ACTION** |
| **Plaintiff,** | ) | |
| **v.** | ) | **C. A. No. 13-1179** |
| **MIDLAND FUNDING, LLC, MIDLAND CREDIT MANAGEMENT, INC.** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ 1

**II. NATURE AND HISTORY OF THE LITIGATION** ........ 3

**III. SUMMARY OF THE SETTLEMENT** ........ 4

A. Settlement Benefits ........ 4

B. Costs of Notice ........ 5

C. Service Award for Class Representative ........ 5

D. Attorneys' Fees and Costs ........ 5

**IV. ELEMENTS FOR CERTIFICATION OF A CLASS** ........ 5

**V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT** ........ 6

A. The Complexity, Expense And Likely Duration Of The Litigation ........ 7

B. The Reaction Of The Class To The Settlement ........ 8

C. The Stage Of The Proceedings And The Amount Of Discovery Completed ........ 9

D. The Risks Of Establishing Liability ........ 9

E. The Risks Of Maintaining The Class Action Through Trial ........ 10

F. The Ability Of The Defendants To Withstand A Greater Judgment ........ 11

G. The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery ........ 11

H. The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation ........ 12

**VI. CONCLUSION** ........ 13

# I. INTRODUCTION

Plaintiff Violet P. Blandina (the "Representative Plaintiff"), by her undersigned counsel, respectfully submits this Memorandum of Law in support of her Motion for Final Approval of the proposed settlement with Defendants Midland Funding, LLC ("Funding") and Midland Credit Management, Inc. ("MCM") (together, "Defendants") as embodied in the Settlement Agreement submitted on August 21, 2015 (Doc. 79-2).[1] As discussed herein, the proposed settlement provides comprehensive relief for the Class and meets all of the standards for settlement approval under Rule 23(e). It should, therefore, be granted final approval as fair, reasonable and adequate as to all class members.

On December 24, 2014, the Court granted Plaintiff's Motion for Class Certification. Doc. 57, reported at 2014 WL 7338744, *9 (E.D. Pa. Dec. 24, 2014). The Court preliminarily approved the settlement on behalf of the Class[2] on September 23, 2015 (Doc. 80). Pursuant to the Preliminary Approval Order, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the March 28, 2016 final approval hearing, was provided to 132,737 individuals by first class mail on November 6, 2015. After a period of return mail processing, a total of 119,915, or 90.34% of the originally mailed notices, were successfully mailed to Class members. *See* Declaration of Kelly Kratz of Dahl Administration, LLC ("Kratz Dec.")

---

[1] Plaintiff will separately move for an award of attorney's fees and costs, and for an individual settlement award for Plaintiff as Class Representative.

[2] The Class is defined in the Settlement Agreement as the Class of consumers certified by this Court's Order of December 24, 2014: "All consumers in the Commonwealth of Pennsylvania to whom, from March 5, 2012, and continuing through the resolution of this action, Defendants sent a letter substantially in the form attached to the Amended Complaint as Exhibit A, in an attempt to collect a consumer debt allegedly owed to Verizon Pennsylvania, Inc."

(Doc. 86).

The settlement represents a fair and reasonable resolution for the Class for various reasons. First, in a consumer class action brought under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (FDCPA), which is remedial in nature, the settlement provides substantial economic relief to Class members.

Second, the release is limited to the claims asserted in the Complaint under the FDCPA. The parties have agreed that nothing in the Settlement Agreement shall be construed to reduce the amount of any Class member's alleged debt, nor shall any Class member be precluded from asserting claims or defenses to Defendants' debt collection attempts, other than the claims specifically released in the Agreement.

Third, the deadline for requesting exclusions and for objections was January 18, 2016. As of February 17, 2016, no members of the Class had objected to the settlement and no one had requested to be excluded. Kratz Dec. ¶¶ 12-13. This factor indicates a fair settlement.

For these reasons and for the reasons set forth in greater detail below, the settlement is fair, reasonable and adequate to the Class and satisfies all of the criteria that courts routinely apply for the approval of class action settlements. *See, e.g., In Re Prudential Insurance Company of America Sales Litigation*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II. NATURE AND HISTORY OF THE LITIGATION

The three year history of this hard fought litigation is recited in Plaintiff's brief filed in support of preliminary approval, Doc. 79-1, and need not be repeated at length here. The parties went through several early, unsuccessful attempts to resolve the case through

private mediation, then proceeded with discovery, depositions and eventually extensive class certification and summary judgment briefing. The motions resulted in two decisions of this Court, granting Plaintiff summary judgment for liability under the FDCPA[3] and certifying the Class.[4]

## III. SUMMARY OF THE SETTLEMENT

The essential terms of the settlement preliminarily approved by this Court by Order entered September 23, 2015 are set out in the Settlement Agreement attached to the Motion for Preliminary Approval (Doc. 79-1). The settlement is fair, adequate and reasonable in light of the relevant facts, the applicable law, and the value of the settlement to the Class.

### A. Settlement Benefits

The Settlement Agreement provides compensatory relief in the amount of $350,000 distributed equally among the claiming members of the Class. The monetary compensation is not the maximum amount the Class could have been awarded under the statute had the case gone to trial,[5] but it is nonetheless a substantial amount. The sum shall be distributed equally among the 8,785 members of the Class who filed valid claims,[6] or approximately $40.00 each.

---

3 Doc. 54, reported at 2014 WL 6892083 (E.D. Pa. Dec. 4, 2014).

4 Doc. 57, reported at 2014 WL 7338744 (E.D. Pa. Dec. 24, 2014).

5 *See* 15 U.S.C. § 1692k(a)(2)(B)(ii), limiting statutory damages in class actions to the lesser of one percent of a defendant's net worth, or $500,000.

6 According to the settlement administrator, as of the claims deadline, 8,785 class members had filed valid claims. Kratz Dec., ¶ 14. Subsequent to the claims deadline, more claims may be submitted. Some of the late claims may be response to deficiency notices sent by the settlement administrator. *Id*. Plaintiff will request, at the hearing on final approval, that the late filed claims be honored.

### B. Costs of Notice

The Defendants have paid or will pay all costs associated with notice and settlement administration, as set forth in the Settlement Agreement.

### C. Service Award for Class Representative

Subject to the Court's approval, the parties have agreed that the representative Plaintiff, Ms. Blandina, will be paid an individual settlement award of $5,000.00 by the Defendants for her individual claims and for her services in connection with representing the Class.

### D. Attorneys' Fees and Costs.

Plaintiff will file a motion seeking payment of her counsel fees and costs under the fee-shifting provisions of the FDCPA, 15 U.S.C. § 1692k(a)(3). In accordance with the Settlement Agreement, Plaintiff will not seek in excess of $245,000. Defendant has agreed to pay that sum upon approval by the Court. This payment will in no way affect the benefits to be distributed to the Class members. The amount of attorneys' fees and expenses to be paid to Class Counsel was not agreed to by the parties until well after agreement was reached on the other terms of the Settlement Agreement.

## IV. ELEMENTS FOR CERTIFICATION OF A CLASS

This Court has already ruled that the Class may be certified, with Ms. Blandina as Class Representative and her lawyers as Class Counsel. *Blandina v. Midland Funding, LLC, et al*, 2014 WL 7338744, *9 (E.D. Pa. Dec. 24, 2014). As such, all the elements for certification of the Class for whom the case is being settled have been met.

## V. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND SHOULD BE APPROVED BY THE COURT

When a proposed class-wide settlement is reached, it must be submitted to the court for approval. NEWBERG at § 11.24. Preliminary approval is the first of three steps that comprise the approval procedure for settlement of a class action. The second step is the dissemination of notice of the settlement to all class members. The third step is a settlement approval hearing. *See* MANUAL FOR COMPLEX LITIGATION (Fourth) § 21.63 (2004), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/mcl4.pdf/$file/mcl4.pdf. The first two steps have been completed.

The question presented on a motion for final approval of a proposed class action settlement is whether the proposed settlement is fair in light of the following factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation….

*Girsh*, 521 F.2d at 157; *Prudential*, 148 F.3d at 317.

Trial courts generally are afforded broad discretion in determining whether to approve a proposed class action settlement. *See Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995); *Girsh v. Jepson, supra*.

Thus, this Court is now asked to ascertain whether the proposed settlement is within a "range of reasonableness" which experienced attorneys could accept in light of the relevant risks of the litigation. *See Walsh v. Great Atlantic and Pacific Tea Co.*, 96 F.R.D. 632, 642 (D.N.J.), *aff'd*, 726 F.2d 956 (3d Cir. 1983). In determining what falls within this

range, the Court should bear in mind "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion . . ." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the settlement agreement reached by the parties nor to try the case by resolving the issues intentionally left unresolved. *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 804 (3d Cir. 1974); *see also Officers for Justice v. Civil Service Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *Grunin v. International House of Pancakes*, 513 F.2d 114, 123-24 (8th Cir. 1975). A settlement represents the result of a process by which opposing parties attempt to weigh and balance the factual and legal issues that neither side chooses to risk taking to final resolution. Courts, therefore, have given considerable weight to the views of experienced counsel as to the merits of a settlement. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed to the belief of experienced counsel that settlement is in the best interest of the class").

Here, experienced counsel firmly believes that the settlement, as structured and contemplated by the parties, represents an educated and eminently reasonable resolution of the dispute. An evaluation of the relevant factors demonstrates that the settlement fits well within the range of reasonableness and should be approved.

## A. The Complexity, Expense And Likely Duration Of The Litigation

Absent the settlement, the parties would have to proceed to a trial on damages, which would likely be lengthy and expensive. While the Representative Plaintiff believes

she would prevail and obtain a substantial verdict of statutory damages, there is risk she would not obtain a verdict in excess of the amount for which she has settled.[7]

Further, no matter the outcome, it would be unrealistic not to expect appeals from any result reached. Avoidance of this unnecessary expenditure of time and resources clearly benefits all parties. *See In re General Motors Pick-Up Trust Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995) (concluding that lengthy discovery and ardent opposition from the defendant with "a plethora of pretrial motions" were facts favoring settlement, which offers immediate benefits and avoids delay and expense).

**B. <u>The Reaction Of The Class To The Settlement</u>**

As set forth above, notice has been directly mailed to members of the Class advising them of the terms of the settlement and their right to exclude themselves from the Class. The deadline for Class members to exclude themselves and to object was January 18, 2016. As of one month after that date, not one Class member has objected to the proposed settlement and not one Class member exercised the right to opt out. Kratz Dec. ¶¶ 12-13. This is convincing evidence of the proposed settlement's fairness and adequacy. *See Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-119 (3d Cir. 1990) ("only" 29 objections in 281 member class "strongly favors settlement"); *In re Prudential*, 148 F.3d at 318 (affirming conclusion that class reaction was favorable where 19,000 policyholders out of 8 million opted out and 300 objected).

---

7 The FDCPA lists a number of factors that go into assessing the amount of statutory damages in a particular case: "In determining the amount of liability in any action under subsection (a) of this section, the court shall consider, among other relevant factors – (2) in any class action …, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional." 15 U.S.C. § 1692k(b)(2).

**C. <u>The Stage Of The Proceedings And The Amount Of Discovery Completed</u>**

This action was extensively litigated. The action was filed three years ago. Defendant approached Plaintiff concerning early mediation which, after two unsuccessful sessions, was abandoned and the parties returned to litigation. Discovery was completed, including depositions of the Plaintiff and a corporate representative of the Defendants. Thereafter, the parties briefed issues of class certification and summary judgment. After the Court's rulings described above, the parties returned to the idea of a settlement and proceeded with extensive arms-length negotiations. The Court was kept apprised of the parties' efforts. The settlement negotiations were adversarial and somewhat protracted, but eventually the parties were able to inform the Court they had reached an agreement in principle to settle. The parties formally sought preliminary approval of a settlement almost two and a half years after the case was filed.

Thus, the final settlement occurred only after the parties were able to assess its fairness adequately. As a result of the parties' efforts, the litigation had reached the stage where "the parties certainly [had] a clear view of the strengths and weaknesses of their cases." *Bonett v. Education Debt Services, Inc.*, 2003 WL 21658267, *6 (E.D. Pa. 2003), quoting *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986).

**D. <u>The Risks Of Establishing Liability and Damages</u>**

The risk of establishing liability is not a factor in this case, since the Court has already granted summary judgment in favor of Plaintiff on liability.

However, there are risks in proving damages, which Plaintiff has avoided by virtue of the proposed settlement. The determination of damages, like the determination of

liability, is a complicated and uncertain process, typically involving conflicting opinions. In this case, Plaintiff and the members of the Class were seeking the maximum possible award of statutory damages under the FDCPA, 15 U.S.C. § 1692k(a)(2)(B)(ii).

Under section 1692k(a)(2)(B)(ii) of the FDCPA, the most Plaintiff could have won at trial would be one percent of the Defendants' net worth, or $500,000. Here, the Court has ruled that class action damages would have been limited at trial to $500,000, no matter that both Defendants had net worth in excess of $50 million. Doc. 60. And whether that maximum amount would have been awarded would depend on evidence supporting the factors to be considered in arriving at an amount of statutory damages, as described above.

So the settlement amount of $350,000 constitutes a very good result. While Plaintiff believes that the net worth of both Defendants should be available, the Court has ruled to the contrary. Defendants disagree as to their underlying liability and presumably would seriously consider an appeal of that question following trial. Moreover, Defendants would argue that the factors set forth in the statute do not support an award of the statutory maximum. It is by no means certain that Plaintiff would have achieved the maximum statutory damages award, or even an award in excess of the settlement amount, from this Court or a jury.

**E. <u>The Risks Of Maintaining The Class Action Through Trial</u>**

Even though class certification has been granted, it is certainly possible that Defendants could seek decertification, either before trial, during trial or on appeal. *See Saunders v. Berks Credit and Collections*, 2002 WL 1497374, *12 (E.D. Pa. July 11, 2002). While the success of such attempts is uncertain at best, the settlement allows Plaintiff to avoid the delay and expense that would be associated with such proceedings.

**F. The Ability Of The Defendants To Withstand A Greater Judgment**

Defendants' net worth indicates they are able to withstand a greater judgment. However, the settlement amount of $350,000 is still significant and, as discussed above, the factors going to the amount of statutory damages raise the question whether a greater amount could have been obtained after a trial. As such, Plaintiff considers this factor as neutral.

**G. The Range Of Reasonableness Of The Settlement In Light Of The Best Possible Recovery**

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. The expense of a trial and the use of judicial resources and the resources of the parties would have been substantial.

Moreover, in light of the contested liability, it would not be unusual that any judgment entered would have been the subject of post-trial motions and appeals, further prolonging the litigation and reducing the value of any recovery. Thus, a settlement is advantageous to all concerned. An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself. *See Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (class won a jury verdict and a motion for judgment N.O.V. was denied, but on appeal the judgment was reversed and the case dismissed); *Berkey Photo, Inc. v. Eastman Kodak Co.*, 603 F.2d 263 (2d Cir. 1979) (reversal of multimillion dollar judgment obtained after protracted trial); *Trans World Airlines, Inc. v. Hughes*, 312 F. Supp. 478, 485 (S.D.N.Y. 1970), *modified*, 449 F.2d 51 (2d Cir. 1971), *rev'd* 409 U.S. 363, 366 (1973) ($145 million judgment overturned after years of litigation and appeals).

While Plaintiff is confident of her ability to obtain statutory damages at trial, she also recognizes that Defendants have continued to deny all liability and allegations of wrongdoing and that Plaintiff's claim for the maximum statutory damages could have fallen short were the case to continue. In *In re Greenwich Pharmaceutical Securities Litigation*, 1995 WL 251293 (E.D. Pa. April 26, 1995), the court held in finding a $4.3 million settlement within the range of reasonableness where plaintiff's estimate of damages was $100 million:

> [P]laintiffs' most optimal estimate must be tempered by Defendants' repeated and vigorous claim of no damages. When the probability of success at trial is factored into the equation, the settlement is obviously "within the range of reasonableness."

*See also, In re Ikon Office Solutions, Inc.*, 194 F.R.D. 166, 183-84 (E.D. Pa. 2000) (approval of settlement that provided 5.2% of best possible recovery).

Through the proposed settlement, Plaintiff has obtained close to the maximum benefit for the Class available under the FDCPA. This settlement allows Plaintiff to avoid the risks described above and ensures an immediate benefit to the Class. Plaintiff believes the proposed settlement is well within the range of reasonableness and should be approved.

**H. The Range Of Reasonableness Of The Settlement To A Possible Recovery In Light Of All The Attendant Risks Of Litigation**

Essentially, this factor is an amalgam of the analysis described above. When the risks of liability and damages are considered in light of the total potential recovery, this settlement is a very good result for the Class.

## VI. CONCLUSION

For the foregoing reasons, the settlement should be finally approved.

Respectfully submitted,

Date: March 3, 2016

*s/ David A. Searles*

FRANCIS & MAILMAN, P.C.
James A. Francis
David A. Searles
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
(215) 735-8600

SABATINI LAW FIRM, LLC
Carlo Sabatini
216 N. Blakely St.
Dunmore, PA 18512
(570) 341-9000

*Attorneys for Plaintiff and the Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing on the following counsel of record via the Court's ECF Notification.

Andrew M. Schwartz
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN, P.C.
2000 Market Street, 24th Floor
Philadelphia, PA 19103

Date: March 3, 2016

*s/ David A. Searles*
David A. Searles