IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VIOLET P. BLANDINA, on behalf of herself and all others similarly situated  *Plaintiffs* | : CIVIL CLASS ACTION :  : NO. 13-1179 : |
| v. | : : |
| MIDLAND FUNDING, LLC, *et al.*  *Defendants* | : : : |

NITZA I. QUIÑONES ALEJANDRO, J.                                                        MAY 31, 2016

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion for final approval of class action settlement* filed by Plaintiff Violet P. Blandina ("Plaintiff")[1] pursuant to Federal Rule of Civil Procedure ("Rule") 23, [ECF 87], and a *motion for attorneys' fees, reimbursement of expenses and award to class representative*. [ECF 88]. Previously, this Court had granted preliminary approval to the Class Action Settlement Agreement. [ECF 80, 83]. A hearing was scheduled and held on March 28, 2016, to entertain oral argument on Plaintiff's unopposed motion for final approval. Counsel for both parties appeared. For the reasons stated herein, the motion for final approval of the class action settlement and motion for attorneys' fees and expenses are granted.

### BACKGROUND

On March 5, 2013, Plaintiff, on behalf of herself and all others similarly situated, filed a complaint against Defendants Midland Funding, LLC, and Midland Credit Management, Inc. ("Defendants"), alleging that Defendants violated the Fair Debt Collection Practices Act, 15

---

[1] Though this action was brought by Plaintiff on behalf of herself and all others similarly situated, this Memorandum Opinion will use the term "Plaintiff" rather than "Plaintiffs."

U.S.C. §1692a, *et seq.* ("FDCPA"), when sending Plaintiff, and other individuals similarly situated, a form collection letter that allegedly misrepresented that interest was accruing on a debt owed when, in fact, it was not. The case was filed as a class action seeking statutory damages. Defendants deny these allegations and that they violated the FDCPA.

Following discovery and an unsuccessful private mediation, the parties filed extensive briefing on both the summary judgment and class certification issues. On December 4, 2014, this Court granted Plaintiff's motion for partial summary judgment, *in part*, ruling that Defendant Midland Credit Management, Inc. had violated the FDCPA by falsely representing the total amount of debt sought to be collected. [ECF 54]. This Court denied Plaintiff's motion as to Defendant Midland Funding, LLC, however, since genuine issues of material fact existed regarding Midland Funding, LLC's liability. [ECF 54].

By Memorandum Opinion and an accompanying Order dated December 23, 2014, this Court granted Plaintiff's motion for class certification, finding the Class to be:

> All consumers in the Commonwealth of Pennsylvania to whom, from March 5, 2012, and continuing through the resolution of this action, Defendants sent a letter substantially in the form attached to the Amended Complaint as Exhibit A, in an attempt to collect a consumer debt allegedly owed to Verizon Pennsylvania, Inc.

[ECF 56, 57]. Thereafter, on February 2, 2015, this Court granted Defendants' *motion in limine to determine available statutory damages*, [ECF 42], and held that the Class, as certified, would be limited to a total maximum statutory damages award of $500,000.00. [ECF 60, 61].

On April 17, 2015, at the parties' request, this Court referred the matter to United States Magistrate Judge Lynne A. Sitarski for a settlement conference, which was scheduled to be held on June 16, 2015. [ECF 69, 72]. Prior to the settlement conference, the parties reached an interim agreement, and the settlement conference was cancelled. [ECF 73]. On August 21, 2015, Plaintiff filed a motion for preliminary approval of class action settlement and notice to

class. [ECF 79]. By Order dated September 23, 2015, this Court preliminarily approved the parties' class action settlement, and scheduled a hearing for final approval for February 24, 2016. [ECF 80]. At the parties' request, the final approval hearing was subsequently rescheduled for March 28, 2016. [ECF 83].

### The Proposed Class Action Settlement Agreement

The proposed class action settlement agreement contains the following material terms:

- Defendants have agreed to pay the sum of three hundred fifty thousand dollars ($350,000.00)[2] into a Settlement Fund for distribution to Claiming Class Members. This settlement payment is not the maximum amount the Class could have been awarded under the statute had the case gone to trial. *See* 15 U.S.C. §1692k(a)(2)(B)(ii) (limiting statutory damages in class actions to the lesser of one percent of defendant's net worth, or $500,000.00).

- The Settlement fund shall be divided equally among all such Claiming Class Members.

- Defendants shall pay the costs of notice to the Settlement Class and settlement administration.

- Defendants will pay the sum of five thousand dollars ($5,000.00) in full settlement of the individual claims of the Representative Plaintiff, Violet P. Blandina, for her service to the Settlement Class, including the time and effort expended in sitting for a deposition, collecting discovery documents, and meeting with Class Counsel.

- Separate and apart from the Settlement Fund, Defendants will pay the sum of up to two-hundred forty-five thousand dollars ($245,000.00) to Class Counsel, contingent upon approval of the class settlement, for attorneys' fees and costs.

Notice of these material terms was provided to all potential Class Members pursuant to procedures stipulated in the preliminarily approved class action settlement. As of the date of the final approval hearing, no objections had been lodged to any of the proposed class action settlement's terms.

---

[2] Though Plaintiff repeatedly refers throughout her papers to the class action settlement amount of $350,000, the parties' settlement agreement contains what appears to be a typographical error at Paragraph 2.6(a)(i), which refers to the sum of "three hundred fifty thousand, five hundred dollars ($350,000.00)...."

**DISCUSSION**

When granting final approval of a class action settlement, a district court must hold a hearing and conclude that the proposed settlement is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 295 (3d Cir. 2011); *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 258 (3d Cir. 2009). Although there is a strong judicial policy in favor of voluntary settlement agreements, *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982), courts are generally afforded broad discretion in determining whether to approve a proposed class action settlement. *Eichenholtz v. Brennan*, 52 F.3d 478, 482 (3d Cir. 1995). "The law favors settlement particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab.*, 55 F.3d 768, 784 (3d Cir. 1995). In addition to conservation of judicial resources, "[t]he parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), the Third Circuit Court of Appeals set forth factors (often called the "*Girsh* factors") a district court should consider when reviewing a proposed class action settlement. The *Girsh* factors are:

> (1) the complexity, expense and likely duration of the litigation;
> (2) the reaction of the class to the settlement;
> (3) the stage of the proceedings and the amount of discovery completed;
> (4) the risks of establishing liability;
> (5) the risks of establishing damages;
> (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendant to withstand a greater judgment;
> (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and
> (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d at 258 (citing *Girsh*, 521 F.2d at 157). However, no one factor is dispositive. *Hall v. Best Buy Co.*, 274 F.R.D. 154, 169 (E.D. Pa. 2011).

In *Krell v. Prudential Ins. Co. of Am. (In re Prudential)*, 148 F.3d 283 (3d Cir. 1998), the Third Circuit Court identified additional nonexclusive factors (the "*Prudential* factors") for courts to consider for a "thorough going analysis of settlement terms." *See also In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010). These *Prudential* factors often overlap with the *Girsh* factors, and include:

> (1) the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages;
> (2) the existence and probable outcome of claims by other classes and subclasses;
> (3) the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved or likely to be achieved for other claimants;
> (4) whether class or subclass members are accorded the right to opt-out of the settlement;
> (5) whether any provisions for attorneys' fees are reasonable; and
> (6) whether the procedure for processing individual claims under the settlement is fair and reasonable.

*In re Pet Food*, 629 F.3d at 350. Only the *Prudential* factors relevant to the litigation in question need be addressed. *In re Prudential*, 148 F.3d at 323-24.

With these principals in mind, this Court will consider each of the *Girsh* factors and only the relevant *Prudential* factors in its review of the proposed class action settlement.

### *Girsh* Factors

1. *The complexity, expense and likely duration of the litigation*

Needless to say, had the settlement not been reached, this matter would have proceeded to trial on the issues of liability of Defendant Midland Funding, LLC and a determination of

damages, if any. The continued prosecution of Plaintiff's claims against Defendants would have required significant additional expense to the Class and a substantial delay before any potential recovery. Further, no matter the outcome of a trial, it is likely that one or all of the parties would have appealed, leading to further litigation costs and delay in any realized recovery. Thus, the avoidance of unnecessary expenditure of time and resources benefits all parties, and weighs in favor of approving the settlement. *See In re Gen. Motors*, 55 F.3d at 812 (concluding that lengthy discovery and potential opposition by the defendant were factors weighing in favor of settlement).

### 2. *The reaction of the class to the settlement*

"The Third Circuit has looked to the number of objectors from the class as an indication of the reaction of the class." *In re Certainteed Corp. Roofing Shingle Prods. Liab. Litig.*, 269 F.R.D. 468, 485 (E.D. Pa. 2010) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 234-35 (3d Cir. 2001)). "Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re Gen. Motors*, 55 F.3d at 812 (quoting *Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1313 n.15 (3d Cir. 1993)). A low number of objectors or opt-outs is persuasive evidence of the proposed settlement's fairness and adequacy. *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 415 (E.D. Pa. 2010) (citing *In re Cendant*, 264 F.3d at 234-35).

Here, Defendants identified 132,737 individuals who meet the Class definition. Those individuals identified as potential Class members were mailed notices and Class forms. After tracing and re-mailing notices that were initially returned as undeliverable, a total of 119,915 (or 90.34%) of the 132,737 notices were successfully mailed to potential Class members. As of the date of the final approval hearing held on March 28, 2016, no Class member had exercised the right to opt out or had objected to the proposed settlement. Consequently, this factor is

6

persuasive evidence of the fairness and adequacy of the proposed settlement, and weighs in favor of a final approval. *See In re Cendant*, 264 F.3d at 234-35 (finding that a low number of objectors and opt-outs strongly favors approval of the settlement).

        3.     *The stage of the proceedings and the amount of discovery completed*

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Cendant*, 264 F.3d at 235. When evaluating this third *Girsh* factor, courts must evaluate the procedural stage of the case at the time of the proposed settlement to assess whether counsel adequately appreciated the merits of the case while negotiating. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004). "[C]ourts generally recognize that a proposed class settlement is presumptively valid where . . . the parties engaged in arm's length negotiations after meaningful discovery." *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144-45 (E.D. Pa. 2000). Settlements reached following discovery "are more likely to reflect the true value of the claim." *Boone v. City of Phila.*, 668 F. Supp. 2d 693, 712 (E.D. Pa. 2009) (citing *Bell Atl. Corp.*, 2 F.3d at 1314).

As set forth above, this case has been actively litigated from its commencement. Prior to reaching a settlement, the parties participated in unsuccessful private mediation, and engaged in extensive discovery, including the deposition of Plaintiff and Defendants' corporate representative. The parties also engaged in extensive briefing on the issues of class certification, summary judgment, and statutory damages. As a result of the extensive proceedings that preceded the parties' settlement, the parties had ample opportunity to identify and grasp the strengths and weaknesses of each party's case. Consequently, this Court finds that this factor weighs in favor of approval.

*4. The risks of establishing liability*

This *Girsh* factor weighs the likelihood of ultimate success against the benefits of an immediate settlement. The existence of obstacles, if any, to the plaintiff's success at trial weighs in favor of settlement. *In re Warfarin*, 391 F.3d at 537; *In re Prudential*, 148 F.3d at 319.

In this case, after considering the parties' cross-motions for summary judgment, this Court determined as a matter of law that Defendant Midland Credit Management, Inc., was liable to Plaintiff for violating the FDCPA. The Court left for trial, however, the issue of Defendant Midland Funding, LLC's liability. Defendant Midland Funding, LLC, has denied any liability throughout this litigation. While Plaintiff has already established liability as to Defendant Midland Credit Management, Inc., the proposed settlement avoids the risk that Defendant Midland Funding, LLC, is found not liable. Thus, this Court finds that this factor either weighs in favor of approval or is neutral in its effect.

*5. The risks of establishing damages*

This factor "attempts to measure the expected value of litigating the action rather than settling it at the current time." *In re Cendant*, 264 F.3d at 238-39. In this case, Plaintiff and the members of the Class were seeking, but were not guaranteed, the maximum possible award of statutory damages under the FDCPA, 15 U.S.C. §1692k(a)(2)(B)(ii). Under this section, the most Plaintiff could recover for the Class at trial would be $500,000.00. However, simply prevailing on liability would not have necessarily resulted in an award to the Plaintiff and the Class in the maximum allowable amount. Any potential award would have taken into account various factors in determining the appropriate statutory damage award, such as the frequency and persistence of noncompliance, the nature of noncompliance, the resources of Defendants, the number of persons adversely affected and the degree to which the noncompliance was

intentional. *See* 15 U.S.C. §1692k(b)(2). Consequently, there is no certainty that Plaintiff would have achieved the maximum statutory damages recoverable had she prevailed on the merits. In light of this uncertainty as to the amount of any potential damages award, the settlement amount of $350,000.00 is a good result. Accordingly, this factor weighs in favor of approval.

### 6. *The risks of maintaining the class action through trial*

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the [class] action," *In re Gen. Motors*, 55 F.3d at 817, this factor measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial. This case was certified as a class action on December 23, 2014. [ECF 56, 57]. Though a district court retains the authority to decertify or modify a class at any time during the litigation if it proves to be unmanageable, *In re Prudential*, 148 F.3d at 321, the risk of decertification here is no more substantial than the risk in any class action. Therefore, this factor is neutral.

### 7. *The ability of defendants to withstand a greater judgment*

This factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the settlement." *In re Cendant*, 264 F.3d at 240. The parties have represented that Defendants are able to withstand a judgment greater than the $350,000.00 proposed settlement amount. Because the parties have agreed to a settlement amount relatively close to the maximum statutory damages permitted, however, this Court finds that this factor is neutral.

### 8-9. *The range of reasonableness of settlement in light of best and possible recovery and all attendant risks of litigation*

The last two *Girsh* factors, often considered together, evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case. *In re Warfarin*, 391

9

F.3d at 538. In order to assess the reasonableness of a settlement in cases seeking monetary relief, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *In re Prudential*, 148 F.3d at 322.

In light of the questions of fact and law present in this litigation, the value of the proposed settlement substantially outweighs the mere possibility of future relief. Here, the Class is receiving a settlement amount that approximates the maximum statutory damages that could have been realized if Plaintiff ultimately prevailed at trial. The expense of a trial and use of the parties' resources would have been substantial, especially in conjunction with the post-trial motions and appeals that would have likely followed any trial on the merits. Thus, a settlement is advantageous to all parties. Therefore, these factors weigh in favor of approval.

### Relevant *Prudential* Factors

*1. Factors that bear on the maturity of the underlying substantive issues*

This case was settled at a mature point in the proceedings. Most of the pretrial discovery had been completed and, as such, the litigants were in a position to fully evaluate the strengths, weaknesses, and merits of their case. The advanced development of the record weighs in favor of approval. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 215 (E.D. Pa. 2011) (finding settlement reasonable where underlying substantive issues were "mature in light of the experience of the attorneys, extent of discovery, posture of case, and mediation efforts undertaken.").